AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. M-19- 166 -BMJ
A BLACK SAMSUNG GALAXY )
AND A SAMSUNG GALAXY NOTE 9 )
IMEI: 354818100267076 )

FILED APR 01 2019
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Controlled Substance with Intent to Distribute |

The application is based on these facts:

See Affidavit, attached hereto

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Brian Cunningham, Special Agent, HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 4/1/19

_____
Judge's signature

City and state: Oklahoma City, Oklahoma          BERNARD M. JONES, U.S. MAGISTRATE JUDGE
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK SAMSUNG GALAXY AND A SAMSUNG GALAXY NOTE 9 IMEI: 354818100267076, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE HOMELAND SECURITY INVESTIGATIONS OFFICE IN OKLAHOMA CITY, OK | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Brian Cunningham, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the U.S. who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed as a special agent (SA) since December 2010, and I am presently assigned to the Homeland Security Investigations (HSI) office in Oklahoma City,

Oklahoma (hereinafter referred to as "HSI Oklahoma City"). As a SA, I am authorized to conduct criminal investigations of violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. I have received approximately 24 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws. I have arrested, interviewed, and debriefed numerous individuals who have been involved and have personal knowledge of importing, transporting and concealing narcotics, as well as, the amassing, spending, converting, transporting, distributing, laundering and concealing of proceeds from narcotics trafficking and smuggling. I have participated in numerous investigations involving physical and electronic surveillance. I have been the affiant of federal search warrants, including warrants authorizing the search of mobile electronic devices. I have used these types of warrants to further criminal investigations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched are a black Samsung Galaxy and a Samsung Galaxy Note 9 with IMEI 354818100267076 (hereinafter the "Devices"). The Devices

are currently located in secure evidence storage at HSI Oklahoma City, located at 3625 NW 56th St, Oklahoma City, OK.

6. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. The Devices were seized incident to arrest from Ramon SUAREZ-Contreras (SUAREZ) for a violation of 21 U.S.C. § 841, possession with intent to distribute approximately 223.08 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance and approximately 3.11 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

8. On March 7, 2019, Oklahoma Bureau of Narcotics Interdiction Agent Kyle English observed a gray 2007 Chevrolet Suburban (SUV) travelling east on Interstate 40 in Canadian County, Oklahoma that was following a semi-tractor and trailer at an unsafe distance. Canadian County is within the Western District of Oklahoma. The SUV then passed the semi-truck and merged back in front of the truck without providing sufficient clearance. Agent English conducted a traffic stop of the SUV, observing the vehicle was displaying an Arizona license plate with number CKH9942. The traffic stop occurred on

Interstate 40 Eastbound near mile marker 121 in Canadian County, Oklahoma. Agent English made contact with the driver and sole occupant, SUAREZ.

9. Agent English had SUAREZ exit the vehicle and asked him back to issue SUAREZ warnings for following too close and failing to provide sufficient clearance while passing -- both of which are violations Oklahoma law. While SUAREZ was in the vehicle, Agent English noticed he had labored breathing and could see his heart beating rapidly through his shirt. Agent English finished issuing the warnings to SUAREZ and asked if he could ask him a few more questions to which SUAREZ agreed. Agent English asked SUAREZ if he had anything illegal in the vehicle and SUAREZ responded, "You want to check it out." Agent English asked SUAREZ if that was okay (to search the car) and SUAREZ replied it was. Agent English asked if everything in the vehicle belonged to SUAREZ and SUAREZ said it did. Agent English confirmed with SUAREZ that he had permission to search the vehicle and SUAREZ again agreed.

10. During the search of the vehicle, four foil-wrapped bundles were located inside a cross-member, located underneath the vehicle near the front axle. In an attempt to help conceal the bundles, brown paper towels, a t-shirt, and a pair of black "AND1" brand socks were stuffed inside the cross-member with the bundles. One of the foil-wrapped bundles contained a plastic baggy with a white powdery substance. This substance was later field-tested positive for the presence of cocaine. The other three foil-wrapped bundles each contained a plastic baggy with numerous tablets, bearing the

markings "M" with a square around it on one side and "30" on the other side. The tablets matched the appearance of Oxycodone tablets. A TruNarc handheld analyzer was later used to field test the tablets, but the results were inconclusive.

11.     SUAREZ's two cell phones were turned over to Homeland Security Investigations Task Force Officer (TFO) Jamie Breedlove. SUAREZ was booked into the Canadian County Jail on state charges for Possession of a Controlled Dangerous Substance with Intent to Distribute.

12.     On March 8, 2019, HSI SA Anson Luna and I went to the Canadian County Jail and interviewed SUAREZ. The interview was conducted by SA Luna in the Spanish language. SUAREZ was read his Miranda rights in the Spanish language and agreed to waive those rights and speak to us. SUAREZ stated that he was born in Mexico, but lives in Phoenix and stays at various other places. SUAREZ claimed that he knew people in Kentucky, where he sometimes works construction, who take the "M-30s" and that some of these people have asked him if he could obtain those kinds of pills. Because of these requests, in preparation for his most recent trip to Kentucky, he decided to buy some of these pills for resale. SUAREZ admitted that while in Phoenix, he called a Mexican phone number and had the pills sent over from Mexico. SUAREZ admitted that he purchased 1,800 pills for $8,000 and planned to sell them for $10 to $12 each. Finally, SUAREZ claimed that he had borrowed the Chevrolet Suburban from his girlfriend who lives in Phoenix and that he had hidden the pills on the outside of the vehicle.

13. A further investigation revealed that SUAREZ had a bag with clothing in the car, which included "AND1" brand socks similar if not identical to the ones packed in with the drugs and that he was also wearing the same brand and color of socks at the time of his arrest. SUAREZ also had two cell phones in his possession and admitted to using a cell phone to arrange for the purchase of the drugs from a source in Mexico, as reflected in Paragraph 12 above.

14. On March 21, 2019, I received the Oklahoma State Bureau of Investigation Examination Report for the drugs that were discovered in SUAREZ's vehicle. The tablets seized had a gross weight of 223.08 grams and testing demonstrated that they contained fentanyl, a Schedule II drug. The plastic bag containing white powder had a gross weight of 3.11 grams and was determined to be cocaine, a Schedule II drug.

15. Based on the aforementioned facts, there is probable cause to believe that SUAREZ did knowingly possess with intent to distribute 223.08 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance in violation of 21 U.S.C. § 841.

16. The Devices are currently located in the secure evidence storage at HSI Oklahoma City, located at 3625 N.W. 56th St, Oklahoma City, OK. In my training and experience, I know that the Devices have been stored in a manner in which their contents are (to the extent material to this investigation) in substantially the same state as they were when the Devices first came into the possession of HSI.

17. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

18. From my training and experience, I know that drug smuggling is often a conspiratorial crime. Individuals who possess controlled substances with the intent to deliver them typically do so in groups with the assistance of others. Drug smugglers often use their cell phones to communicate with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers are often saved in the individual's phone. In this case, SUAREZ expressly admitted to using one of his phones to arrange for the purchase of the drugs in question.

19. An examination can reveal the approximate location of the Devices and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the Devices' unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21.    There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they

are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are is to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer

      behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

24.   *Manner of execution.* Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Brian Cunningham
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on April 1, 2019:

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched are a black Samsung Galaxy and a Samsung Galaxy Note 9 with IMEI 354818100267076 (hereinafter the "Devices"). The Devices are currently located in secure evidence storage at HSI Oklahoma City.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

### Black Samsung Galaxy



Samsung Galaxy Note 9 with IMEI 354818100267076





## **ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841 involving Ramon SUAREZ-Contreras including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs smuggled as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording Ramon SUAREZ-Contreras' schedule or travel from February 1, 2019, to the present; and

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a. records of Internet Protocol addresses used; and

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the

user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

